28 C.C.P.A.(Patents)

## In re HERCHENRIDER.

### Patent Appeal No. 4407.

Court of Customs and Patent Appeals.

Feb. 3, 1941.

Archworth Martin, of Pittsburgh, Pa. (Edward A. Lawrence, of Pittsburgh, Pa., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting, as unpatentable over the cited prior art, claims 1, 2, 13, 14, 17, 18, and 20 to 27, inclusive, of appellant's application. No claims were allowed.

Claims 1 and 13 are illustrative of the claims on appeal and read as follows:

"1. The method of surfacing strip material and the like which comprises imparting traveling movement to the material and simultaneously maintaining an abrasive strip in contact with the material and effecting continuous traveling movement of the abrasive strip with the material, at a substantially lower rate of speed."

"13. Grinding and polishing apparatus comprising means for imparting traveling movement to strip material and the like, reels of abrasive strips supported at opposite sides of the path of said traveling movement of the material, means for causing the abrasive strips to be continuously advanced through traveling movement of said material, and means for retarding the rate at which the abrasive strips will be withdrawn from said reels, to a speed which is slower than that at which the material travel."

The references cited are:

Sawyer et al., 177,018, May 2, 1876.

Haighs et al. (Brit.), 257,187, August 26, 1926.

Mulholland, 1,847,410, March 1, 1932.

Munday, 1,918,483, July 18, 1933.

Remington, 1,921,039, August 8, 1933.

The alleged invention relates to a method of grinding or polishing metal strips or sheets, and to apparatus for carrying out the method.

Appellant's apparatus is well illustrated in Figure 4 of his drawings. This shows a machine for grinding or polishing metal strips in which the metal strip is con-

tinuously advanced through the machine by means of feed rolls or the like. The metal strip passes between a lower roll, called a "billy," and an upper roll, called the "presser roll." Located on opposite sides of these rolls, and above them, are two reels, one to hold a supply of abrasive strip material in the form of a roll, and the other to function as a take-up reel for the abrasive strip material after it passes between the upper roll and the upper side of the metal strip. Similarly, on opposite sides of the rolls, but below them, are two reels, one to hold a supply of abrasive strip material, and the other to act as a take-up reel for this abrasive material after it passes between the billy roll and the under side of the metal strip. The presser roll is mounted in such manner that it may be moved toward or away from the billy roll, thereby enabling the pressure between the metal strip and the abrasive material on its opposite sides to be adjusted as desired. As stated in the application, as the metal strip passes through the machine it will draw the abrasive strips along with it. However, the rate of movement or feed of the abrasive strips is retarded since the reels from which the abrasive strips are fed are controlled in speed through gear connection with an electric motor. Thus the feed of the abrasive material is kept relatively slow compared with the feed of the metal strip, with the result that a continuous grinding or polishing action takes place between the metal strip and the abrasive strips, and there is a continuous movement of new abrasive material into and out of contact with the metal strip as it passes through the machine, effecting uniform scouring of the metal strip material throughout its entire length. It may also be said in passing that the particular type of apparatus shown in said Figure 4 is capable of being reversed so that the take-up reels become the supply reels and vice versa.

The patent to Sawyer et al. relates to apparatus for sanding one or both sides of flat stock of varying thicknesses. The sanding operation is brought about by having the stock, as it moves through feed rolls, in contact with a belt coated with sand or emery. This belt is of the endless type which travels over two pulleys, one of which is power-driven. Of course, where it is desired to sand both sides of the stock, two belts are employed, one on each side of the stock. It is apparent that each area of the abrasive moves repeatedly into engagement with the flat stock.

The patent to Haighs et al. also relates to a sanding machine for wood working purposes. This also involves the use of an endless belt of sandpaper or similar material rotated about pulleys.

The patent to Mulholland relates to a machine for polishing thin metal plates, and is cited by the Patent Office tribunals as showing it to be old to use back-up rolls to support the work supporting roll. In this patent a work supporting roll is shown which rests upon two back-up rolls positioned on either side of it.

The patent to Munday is for a means of truing the peripheral contour of commutators or slip rings on rotary electric machines, and involves the use of a strip abrasive material which is pressed against the commutator or slip ring by means of pressure blocks inserted in the brush holders. The direction of abrading action may be in the same direction as the movement of the workpiece or commutator, and retarded feed of the abrasive strip material is effected through the use of an escapement mechanism which limits the rotation of the supply roll holding the abrasive material.

The patent to Remington relates to apparatus and method for grinding and polishing band saws. The band saw is disposed around two pulleys, one of which is motor driven; arranged on opposite sides of the band saw is a pair of motor driven grinding wheels of the cup or ring type. Provision is made for moving these grinding wheels toward or away from each other so that the pressure upon the band saw as it passes between these grinding wheels may be adjusted as desired. Each of the grinding wheels is individually driven by motor, and the speed of each is separately controlled by suitable means. Here also the same abrasive material repeatedly comes into contact with the band saw.

Claims 1, 2, 17, 18, 20, 21 and 22 of appellant's application are method claims; the remaining claims are apparatus claims.

The examiner in his statement applied the references to the claims in the following language:

"Claims 1, 2, 13, 14, 17, 18, 20, 21, 22, 23, 24, and 25 were rejected as unpatentable over patent to Remington in view of patent to Munday. Remington, on page 2, lines

84 to 96, describes how the tool moves very slowly and the work strip at a rapid rate. The patent to Munday also moves the surface of the work over the tool at a high rate of speed while the abrasive tool is feeding slowly. And like Remington, the abrading action is in a direction parallel to the path of travel of the material being surfaced. No invention would be involved in using the abrasive tool of Munday on the machine of Remington in place of the grinding wheels of Remington. The escapement mechanism of Munday could be so geared that the feed could be made as nearly continuous as desired. It is further believed to require only mechanical skill to substitute a motor for the escapement mechanism of Munday.

"Claims 17, 18, 20, 21, and 22 were rejected as unpatentable over patent to Sawyer in view of patent to Munday. The tool mechanism of Munday could obviously be used on the machine of Sawyer. Munday shows that it is old to have the surface of the work move at a much more rapid rate than the tool.

"Claims 26 and 27 were rejected as unpatentable over patent to Haighs et al. in view of patent to Mulholland. Mulholland shows it to be an old expedient to use back up rolls to support the work supporting roll. No invention would therefore be involved in using in the Haighs machine back up rolls for the support rolls (C) in the manner shown by Mulholland."

The material part of the decision of the Board of Appeals affirming the decision of the examiner is short and reads as follows:

"The method claims do not distinguish definitely over the references as stated by the examiner. Munday may use an escapement mechanism to permit slow motion only, but it is obvious that a brake could be used. In any event, even when the escapement mechanism is used a substantially continuous feed could be effected.

"The apparatus claims likewise fail to clearly distinguish over the references. See Fig. 12 of Munday where the abrasive is wound up at a predetermined rate and unwound at 198ª to provide a substantially continuous feed.

"Claims 26 and 27 do not appear to be allowable as stated by the examiner."

It is clear that the references disclose all of the elements of the claims except that calling for "continuous traveling movement of the abrasive strip with the material," as described in claim 1, and in substantially the same language in each of the other claims.

One of the principal objects of appellant's claimed invention is stated in his specification as follows: "Another object of my invention is to provide means for continuously supplying fresh abrasive to a moving strip, and to, therefore, effect uniform scouring of the strip throughout its entire length."

The specification further states that the material to be polished may be moved forwardly at anywhere from fifty feet per minute to five hundred feet per minute, while the abrasive strips are caused to advance at from six inches to eighteen inches per minute.

In appellant's method and apparatus no part of the work engages a given area of the abrasive more than once, and the abrasive constantly moves forward at a uniform rate. It is admitted by the Patent Office tribunals that this is not true of any of the references. The reference most nearly approaching appellant's method is the patent to Munday, who employs an escapement mechanism to regulate the forward movement of the abrasive strip. It is obvious that under Munday's concept the abrasive strip would be given an intermittent or step by step movement, and that each area of the commutator would come into engagement with the same portion of the abrasive strip many times. If, instead of a commutator, a steel strip is polished in Munday, it is plain that the polishing of the strip would be much greater at the beginning of the intermittent stop of the abrasive strip than at the end thereof.

This seems to have been recognized by the examiner when he stated that "The escapement mechanism of Munday could be so geared that the feed could be made as nearly continuous as desired," and that it would require only mechanical skill to substitute a motor for the escapement mechanism of Munday. The Board of Appeals was of the opinion that the intermittent movement of the abrasive strip permitted by the escapement mechanism of Munday is "continuous" within the meaning of the claims, but in this view appellant's entire conception would have to be ignored.

██ We are clearly of the opinion that the words "continuous traveling movement" and equivalent words in the claims mean

movement without interruption such as would occur with the employment of an escapement mechanism.

With respect to the statement of the Board of Appeals that Figure 12 of Munday shows a substantially continuous feed of the abrasive strip, this cannot be agreed to for the reason that the patent states that in the construction shown in that drawing an escapement mechanism is also provided.

■ With respect to the statement of the board that a brake could be used in Munday's structure in lieu of the escapement mechanism, and also the statement of the examiner that the escapement mechanism of Munday could be so geared that the feed could be made as nearly continuous as desired, we think due consideration was not given to appellant's concept that an improved result could be secured by continuously supplying fresh abrasive to a moving strip to be polished, thereby effecting uniform scouring of the strip throughout its entire length.

This concept is not found in any of the references, and should be considered in connection with the steps provided for carrying out such concept. In re Earle et al., 102 F.2d 232, 26 C.C.P.A., Patents, 974; Rosemary Mfg. Co. v. Halifax Cotton Mills, Inc., 4 Cir., 257 F. 321.

■ We find nothing in the references, either singly or combined, that suggests the combination of elements set out in the method claims, nor do we think that such combination would be obvious to one skilled in the art.

With respect to the apparatus claims, the examiner held that Munday's escapement mechanism could be so regulated that the feed of the abrasive would be as nearly continuous as desired. If the examiner is correct in this, we should hold the apparatus claims to be unpatentable over Munday. However, we are not in agreement with the view of the examiner that Munday's escapement mechanism could be so operated as to accomplish the same object as does the apparatus claimed by appellant. Any escapement must operate intermittently, and even if highly geared it would result in periodic, jerky pulls on the abrasive strip, making it impossible to secure the results which are obtained by appellant's apparatus.

■ However, in dealing with apparatus claims, the question remains whether, giving the elements of the claims a broad construction, they are so drawn as to distinguish in a patentable sense over the prior art. Specifically, if, as suggested by the examiner, the escapement mechanism of Munday could be operated with sufficient rapidity to satisfy the element of the claims providing for "means for causing the abrasive strips to be continuously advanced through traveling movement of said material," giving to such element a broad construction, then the claims should be rejected. We are of the opinion that there is such doubt upon this point as to warrant the allowance of the apparatus claims under the well-established rule that doubt on the question of patentability of claims should be resolved in favor of the applicant.

Accordingly we hold, for the reasons hereinbefore stated, that all of the claims before us are patentable over the references cited, and the decision of the Board of Appeals is reversed.

Reversed.