37 C.C.P.A.(Patents)

**Application of BLONDIAU.**

**Patent Appeals No. 5664.**

United States Court of Customs and Patent Appeals.

April 3, 1950.

Irvin S. Thompson, Washington, D. C., for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

224

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JOHNSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner finally rejecting as unpatentable over the prior art all of the claims, 1 and 2, of an application for a patent on a method of manufacture of blast furnace slag cement.

The claims read as follows:

"1. A method of manufacture of blast furnace slag cement, consisting in uniformly calcining during 5 to 10 minutes a product containing calcium sulphate at a temperature comprised between 850° C and the temperature of rapid decomposition of the calcium sulphate in said product, and in simultaneously crushing a substantial amount of so calcined product with the blast furnace slag constituting the basic matter of the cement.

"2. A method of manufacture of blast furnace slag cement, consisting in uniformly calcining during 5 to 10 minutes a product containing calcium sulphate at a temperature lower but as near as possible to the temperature of rapid decomposition of the calcium sulphate in said product, and in simultaneously crushing a substantial amount of so calcined product with the blast furnace slag constituting the basic matter of the cement."

The reference patent is appellant's British patent No. 473,855, dated November 6, 1935.

The manufacture of blast furnace slag cement is quite old, and the method of its manufacture as shown in the present application is said to be an improvement over the prior art procedures involving the addition of calcium sulphate or gypsum to blast furnace slag cement to accelerate the setting properties of the cement. A departure from the teaching of the reference is said to be involved in the calcining of the calcium sulphate or gypsum at a temperature between 850° C. and the temperature of rapid decomposition of the calcium sulphate

by limiting the calcining period to from 5 to 10 minutes. Appellant states that by so limiting the calcining period "a product is obtained in which the whole of the $CaSO^4$ which was present before the calcination is present after the calcination in the calcined product."

The process of the rejected claims and that of the reference are practically the same, except that in the reference no calcining time is given, while in the application at bar the calcining time is limited to from 5 to 10 minutes. Appellant contends that the time of calcination is the essence of the invention alleged. He asserts that it is responsible for the improved results said to follow, and that the time limit specified is therefore critical. The reference patent, he contends, "does not disclose the claimed invention," and in support of his position cites Naylor et al. v. Alsop Process Company, 8 Cir., 1909, 168 F. 911, 916.

We find no compelling analogy between that case and the case at bar. There the action was to restrain the infringement of letters patent granted to Andrews in England in February 1901 for a process of bleaching and conditioning flour by passing the flour in a state of fine division through an atmosphere containing a small regulated quantity of gaseous nitrogen peroxide. Additional claims embraced methods of producing nitrogen peroxide, one of which was by subjecting atmospheric air to a flaming electric arc. One of the reasons the Andrews patent was alleged to be invalid was because it lacked patentable invention over a patent granted to Frichot in May 1898. In the Frichot patent, the method claim specified a process of treating flour consisting of exposing it "to the action of nascent oxygen or ozone, or by ozonized air or ozonized oxygen." It was conceded that ozone was the agent used by Frichot. It was claimed to have been proven "as the result of laboratory experiments that ozone will not in fact bleach flour, and that the apparatus specified in Frichot's patent produces a small quantity of nitrogen peroxide as a by-product, and that this, though unknown to Frichot, was the agent which produced the results claimed by him." The court, however, held that "It is not estab-

lished that ozone will not bleach flour"; that the evidence tended to show that ozone alone would produce that result, though by the process, the flour became tainted and ruined; that flour exposed to a gaseous compound of air, ozone, and nitrogen peroxide was bleached by the nitrogen peroxide, but tainted by the ozone; and that such tainting resulted from the Frichot process which fact Frichot mentioned repeatedly in his patent, providing methods for treating the flour to remove the taint. The court said:

"The result is that, while the nascent oxygen is producing the bleaching effects desired, other elements in the compound from which it is liberated produce other effects in the compound into which it enters. That was the fatal defect of ozone in the Frichot process. * * * So the teaching of Frichot that nascent oxygen liberated from ozone would bleach flour served as a warning rather than a guide to Andrews, for Frichot's experience also taught that his process would taint the flour.

* * * * * *

" * * *. Here it had not been discovered that flour could be commercially bleached by any chemical agent. The complainant [grantee of U. S. rights under the Andrews patent] was the first to discover a successful process for accomplishing that result. His act was not selection of known agents in the art of bleaching flour, but was the discovery of the only agent that has yet been found to accomplish that result successfully in the milling industry."

Andrews' process avoided all tainting of the flour, and the court correctly held that the process was patentable over Frichot's process. That case provides no parallel for the instant case, however, for appellant's announcement that a certain time of calcination should be followed in using his own previously patented process does not compare with Andrews' inventive act in discovering that nitrogen peroxide alone could be used successfully to bleach without tainting flour where the prior art taught the use of a gaseous compound, including nitrogen peroxide as a component, at least in reaction, which while bleaching the flour tainted it so as to require further processing to remove the taint.

The examiner held that the chief purpose of calcining being to cause dehydration, a high temperature such as 850° C. where the material being calcined was in a finely divided state, would be effective in a short period of calcination, and that from 5 to 10 minutes would be a reasonable time which an artisan would employ as the firing period in the calcination of the calcium sulphate. The British patent cited did not disclose any period of calcination, and the issue here, of course, is whether it is invention to limit the firing period to from 5 to 10 minutes. One skilled in the art would, we believe, use the proper time to obtain the best results from the calcination, and we believe this could be determined by mere experimentation. As said so long ago by the Supreme Court in Smith v. Nichols, 21 Wall. 112, 88 U.S. 112, 119, 22 L.Ed. 566, "a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent." See also Lehman v. Ripley et al., 8 Cir., 1925, 3 F.2d 518. Achievements which result from trial and error experimentation are the product of a routineer and not an inventor, Rembert et al. v. Coe, 1943, 78 U.S.App.D.C. 51, 136 F.2d 793, and we think the proper time of calcination at the temperatures taught by the reference British patent to yield the best results would be determined by the mere experimentation of an artisan. A reference patent need not describe in detail that which is obvious to one skilled in the art. In re Haney et al., 158 F.2d 296, 34 C.C.P.A., Patents, 767.

Appellant contends that in any event the question as to whether the reference can be modified so as to meet the terms of appellant's claims is involved in such doubt as to warrant allowance of the claims under the rule that doubt on the question of patentability should be resolved in favor of the applicant, citing In re Herchenrider, 117 F.2d 261, 28 C.C.P.A., Patents, 876.

We have no such doubt. To use the proper time for calcining where no time was specified in the prior art does not in the case before us amount to invention.

For the reasons stated, the decision of the board is affirmed.

Affirmed.