Marshall, Ch. J.,
(a) delivered the opinion of the *58 court. — As preliminary to any investigation of the merits of this motion, this court deems it proper to declare, that it disclaims all jurisdiction not given by the constitution, or by the laws of the United States.
Courts which originate in the common law possess a jurisdiction which must be regulated by the common law, until some statute shall change their established principles; but courts which are created by written law, and whose jurisdiction is defined by written- law, cannot transcend that jurisdiction. It is unnecessary to state the reasoning on which this opinion is founded, because it has been repeatedly given by this court; and with the decisions heretofore rendered on this point, no member of the bench has, even for an instant, been dissatisfied. The reasoning from the bar, in relation to it, may be answered by the single observation, that for the meaning *of the term habeas corpus, resort may unquestionably be had to the J common law; but the power to award the writ by any of the courts of the United States, must be given by written law.
This opinion is not to be considered as abridging the power of courts over their own officers, or to protect themselves, and. their members, from being disturbed in the exercise of their functions. It extends only to the power of taking cognisance of any question between individuals, or between the government and individuals.
To enable the court to decide on such question, the power to determine it must be given by written law. The inquiry, therefore, on this motion will be, whether by any statute, compatible with the constitution of the United States, the power to award a writ of habeas corpus, in such a case as that of Erick Bollman and Samuel Swartwout, has been given to this court.
The 14th section of the judiciary act (1 U. S. Stat. 81), has been considered as containing a substantive grant of this power. It is in these words: “That all the before-mentioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and all other writs, not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law. And that either of the justices of the supreme court, as well as judges of the district courts, shall have power to grant writs of habeas corpus, for the purpose of an inquiry into the cause of commitment: provided, that writs of habeas corpus shall in no case extend to prisoners in jail, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify.”
*The only doubt of which this section can be susceptible is, whether the restrictive words of the first sentence limit the power to the award of such writs of habeas corpus as are necessary to enable the courts of the United States to exercise their respective jurisdictions in some causes which they are capable of finally deciding. It has been urged, that in strict grammatical construction, these words refer to the last antecedent, which is, “ all other writs not specially provided for by statute.” This criticism may be correct, and is not entirely without its influence; but the sound construction which the court thinks it safer to adopt, is, that the true sense of the words is to be determined by the nature of the provision, and by the context.[1]
*59 It may be worthy of remark, that this act was passed by the first congress of the United States, sitting under a constitution which had declared “ that the privilege of the writ of habeas corpus should not be suspended, unless when, in cases of rebellion or invasion, the public safety might require it.” Acting under the immediate influence of this injunction, they must have felt, with peculiar force, the obligation of providing efficient means by which this great constitutional privilege should receive life and activity; for if the means be not in existence, the privilege itself would be lost, although no law for its suspension should be enacted. Under the impression of this obligation, they give to all the courts the power of awarding writs of habeas corpus. It has been truly said, that this is a generic term, and includes every species of that writ. To this it may be added, that when used singly —when we say the writ of habeas corpus, without addition, we most generally mean that great writ which is now applied for ; and in that sense, it is used in the constitution.
*The section proceeds to say, that “ either of the justices of the supreme court, as well as judges of the district courts, shall have [*96 power to grant writs of habeas corpus, for the purpose of an inquiry into the cause of commitment.” It has been argued, that congress could never intend to give a power of this kind to one of the judges of this court, which is refused to all of them when assembled. There is certainly much force in this argument, and it receives additional strength from the consideration, that if the power be denied to this court, it is denied to every other court of the United States; the right to grant this important writ is given, in this sentence, to every judge of the circuit or district court, but can neither be exercised by the circuit nor district court. It would be strange, if the judge, sitting on the bench, should be unable to hear a motion for this writ, where it might be openly made, and openly discussed, and might yet retire to his chamber, and in private, receive and decide upon the motion. This is not consistent with the genius of our legislation, nor with the course of our judicial proceedings. It would be much more consonant with both, that the power of the judge, at his chambers, should be suspended during his term, than that it should be exercised only in secret.
Whatever motives might induce the legislature to withhold from the supreme court the power to award the great writ of habeas corpus, there could be none which would induce them to withhold it from every court in the United States : and as it is granted to all, in the same sentence, and by the same words, the sound construction would seem to be, that the first sentence vests this power in all the courts of the United States ; but as those courts are not always in session, the second sentence vests it in every justice or judge of the United States.
The doubt which has been raised on this subject maybe further explained, by examining the character of the various writs of habeas corpus, and selecting those to which this general grant of power must be restricted, if taken in the limited sense of being merely used to enable *the court to exercise its jurisdiction in causes which it is enabled to decide finally. *■
The various writs of habeas corpus, as stated and accurately defined by Judge Blackstone (3 Bl. Com. 129), are, 1st. The writ of habeas corpus ad respondendum, “ When a man hath a cause of action against one who is confined by the process of some inferior court; in order to remove the pris *60 oner and charge him with this new action in the court above.” This case may occur, when a party, having a right to sue in this court (as a state, at the time of the passage of this act, or a foreign minister) wishes to institute a suit against a person who is already confined by the process of an inferior court. This confinement may be either by the process of a court of the United States, or of a state court. If it be in a court of the United States, this writ would be inapplicable, because perfectly useless, and consequently, could not be contemplated by the legislature. It would not be required, in such ease, to bring the body of the defendant actually into court, and he would already be in the charge of the person who, under an original writ from this court, would be directed to take him into custody, and would already be confined in the same jail in which he would be confined under the process of this court, if he should be unable to give bail.
If the party should be confined by process from a state court, there are many additional reasons against the use of this writ in such a case. The state courts are not, in any sense of the word, inferior courts, except in the particular cases in which an appeal lies from their judgment to this court; and in these cases, the mode of proceeding is particularly prescribed, and is not by habeas corpus. They are not inferior courts, because they emanate from a different authority, and are the creatures of a distinct government.[1]
2d. The writ of habeas corpus ad satisfaciendum, “ when a prisoner hath had judgment against him in an action, and the plaintiff is desirous to bring him up to *some superior court to charge him with process of execu *98] tion.” This case can never occur in the courts of the United States. One court never awards execution on the judgment of another. Our whole judicial system forbids it.
3d. Ad prosequendum, testificandum,, deliberandum, &e. “Which issue when it is necessary to remove a prisoner, in order to prosecute, or bear testimony, in any court, or to be tried in the proper jurisdiction wherein the fact was committed.” This writ might, unquestionably, be employed to bring up a prisoner to bear testimony in a court, consistently with the most limited construction of the words in the act of congress ; but the power to bring a person up that he may be tried in the proper jurisdiction, is understood to be the very question now before the court.
4th and last. The common writ ad faciendum et recipiendum, “ Which issues out of any of the courts of Westminster Hall, when a person is sued in some inferior jurisdiction, and is desirous to remove the action into the superior court, commanding the inferior judges to produce the body of the defendant, together with the day and cause of his caption and detainer (whence the writ is frequently denominated a habeas corpus cum causé), to do and receive whatever the king’s court shall consider in that behalf. This writ is grantable of common right, without any motion in court, and it instantly supersedes all proceedings in the court below.”
Can a solemn grant of power to a court to award a writ be considered as applicable to a case in which that writ, if issuable at all, issues by law, without the leave of the court ? It would not be difficult to demonstrate, *61 that the writ of habeas corpus cúm causé cannot be tbe particular writ contemplated by the legislature, in tbe section under consideration; but it will' be sufficient to observe, generally, tbat tbe same act prescribes a different mode for bringinginto tbe courts of tbe United States suits brought in a *state court against a person baviug a right to claim tbe jur- ™ isdiction of tbe courts of tbe United States. He may, on bis first *- appearance, file bis petition and authenticate tbe fact, upon which tbe cause is ipso facto removed into the courts of the United States.
Tbe only power, then, which, on this limited construction, would be granted by tbe section under consideration, would be tbat of issuing writs of habeas corpus ad testificandum. Tbe section itself proves tbat this was not tbe intention of tbe legislature. It concludes with tbe following proviso, “ That writs of habeas corpus shall, in no case, extend to prisoners in jail, unless where they are in custody under or by color of tbe authority of tbe United States, or are committed for trial before some court of tbe same, or are necessary to be brought into court to testify.” This proviso extends to tbe whole section. It limits tbe powers previously granted to tbe courts, because it specifies a case in which it is particularly applicable to tbe use of tbe power by courts — where tbe person is necessary to be brought into court to testify. Tbat construction cannot be a fair one, which would make tbe legislature except from tbe operation of a proviso, limiting tbe express grant of a power, tbe whole power intended to be granted.
From this review of tbe extent of tbe power of awarding writs of habeas corpus, if tbe section be construed in its restricted sense ; from a comparison of tbe nature of tbe writ which tbe courts of tbe United States would, on tbat view of tbe subject, be enabled to issue ; from a comparison of tbe power so granted with tbe other parts of tbe section, it is apparent, tbat this limited sense of the term cannot be that which was contemplated by tbe legislature.
But tbe 33d section throws much light upon this question. It contains these words : “And upon all arrests in criminal cases, bail shall be admitted, except where tbe punishment may be death ; in which cases it shall not be admitted, but by tbe supreme or a circuit court, or by a justice of tbe supreme court, or a judge of a district *court, who shall exercise their p. „„ discretion therein, regarding tbe nature and circumstances of the L offence, and of tbe evidence, and of tbe usages of law.” Tbe appropriate process of bringing up a prisoner, not committed by tbe court itself, to be bailed, is by tbe writ now applied for. Of consequence, a court possessing tbe power to bail prisoners, not committed by itself, may award a writ of habeas corpus for tbe exercise of tbat power. Tbe clause under consideration obviously proceeds on tbe supposition tbat this power was previously given, and is explanatory of tbe 14th section.
If, by tbe sound construction of tbe act of congress, tbe power to award writs of habeas corpus, in order to examine into tbe cause of commitment, is given to this court, it remains to inquire, whether this be a case in which tbe writ ought to be granted. The only objection is, tbat tbe commitment has been made by a court having power to commit and to bail. Against this objection, tbe argument from the bar has been so conclusive, tbat nothing can be added to it.
If, then, this were res integra, tbe court would decide in favor of tbe *62 motion. But the question is considered as long since decided. The Case of Hamilton is expressly in point in all its parts; and although the question of jurisdiction was not made at the bar, the case was several days under advisement, and this question could not have escaped the attention of the court. From that decision, the court would not lightly depart. (United States v. Hamilton, 3 Dall. 17.)
If the act of congress gives this court the power to award a writ of habeas corpus in the present case, it remains to inquire whether that act be compatible with the constitution. In the mandamus case (Marbury v. Madison, 1 Cr. 175), it was decided, that this court would not exercise original jurisdiction, except so far as that jurisdiction was given by the constitution. But so far as that *case has distinguished between original and appel*101] late jurisdiction, that which the court is now asked to exercise is clearly appellate. It is the revision of a decision of an inferior court, by which a citizen has been committed to jail.
It has been demonstrated at the bar, that the question brought for-forward on a habeas corpus, is always distinct from that which is involved in the cause itself. The question whether the individual shall be imprisoned^, is always distinct from the question whether he shall be convicted or ae-’ quitted of the charge on which he is to be tried, and therefore, these questions are separated, and may be decided in different courts. The decision that the individual shall be imprisoned, must always precede the application for a writ of habeas corpus, and this writ must always be for the purpose of revising that decision, and therefore, appellate in its nature. But this point also is decided in Hamilton's Case and in Burford’s Case, (a)
If at any time the public safety should require the suspension of the powers vested by this act in the courts of the United States, it is for the legislature to say so. That question depends on political considerations, on which the legislature is to decide. Until the legislative will be expressed, this court can only see its duty, and must obey the laws.[1]
The motion, therefore, must be granted.

 The only judges present when these opinions were given were, Marshall, Ch. J., Washington. Johnson and Livingston, Justices. Cushing, J., and Chase, J., were prevented by ill-health from attending.

 See United States v. Williamson, 4 Am. L. Reg. 11; Ex parte Everts, 1 Bond 197.

 See Norris v. Newton, 5 McLean 92; United States v. Rector, Id. 174; Veremaitre’s Case, 3 Am. L. J. 438; Ex parte Safford, 5 Am. L. Reg. 659 ; Ex parte McCann, 14 Id. 158; United States v. French, 1 Gallis. 1; Ex parte Cabrera, 1 W. C. C. 232.

 At February term 1806, in this court, 3 Cr. 448.

 The president has no power to suspend the writ of habeas corpus, without an act of congress to authorize it. Ex parte Merryman, Taney’s Dec. 246; McCall v. McDowell, 1 Deady 233; Ex parte Benedict, 4 West. L. Mo. 449. The writ of habeas corpus stands, under the constitution, as it was under the common law, an indefeasible privilege, above the sphere of ordinary legislation. United States v. Williamson, 4 Am. L. Reg. 6. It cannot be suspended, unless when, in cases of rebellion or invasion, the public safety may require it. Ex parte Keeler, Hempst. 306. The effect of a suspension of the privilege of the writ of habeas corpus is, to confer on the executive the power immemorially exercised by the British Crown, before the passage of the habeas corpus act, 31 Car. II. (but which was thenceforth taken away by that statute), namely, the power to arrest, by warrant, for treason in generality, or suspicion of treason or treasonable practices, without specially expressing the nature of the treasonable acts charged, as required by the habeas corpus act, and to imprison the person so arrested on such warrant, for an indefinite period, without bail or trial. See And. 297, pl. 307; 1 Hallam Const. Hist. 252. In the exercise of such a power, there must be a warrant, and it must be for treasonable practices. A suspension of the habeas corpus does not divest the civil courts of the right to inquire into the legality of the detention of a person claimed to have been enlisted into the army, through fraud or duress. Such power is inconsistent with the existence of a free government; it is without precedent to justify it; it is against the spirit of the constitution, and of all the foundations on which it is erected. Biuney on Habeas Corpus, part III.