PEOPLE, PLAINTIFF AND APPELLEE, v. TORRES, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Aguadilla in a Prosecution for Violation of Section 2 of the Jones Act.

No. 1492.—Decided July 30, 1920.

INTOXICATING LIQUORS—PROHIBITION—JURISDICTION.—The crime defined and penalized by section 2 of the Organic Act, consisting in importing, manufacturing, selling or giving away, or exposing for sale or gift in Porto Rico, any intoxicating drink or drug, except for medicinal, sacramental, industrial or scientific purposes, is a crime against the United States and not against The People of Porto Rico; therefore, the United States District Court for Porto Rico has jurisdiction of such a crime and not the insular courts.

ID.—ID.—ID.—JURISDICTION.—When an act of Congress defines a crime the court or courts having jurisdiction of said crime should be defined also by a general or special law, or by a necessary inference.

The facts are stated in the opinion.

*Mr. E. Martínez Avilés* for the appellant.

*Mr. J. E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was a complaint filed in the Municipal Court of Lares charging Nazario Torres with a crime against the provisions of section 2 of the Act of Congress approved March 2, 1917, familiarly known as the Jones Act, in that he had sold half a bottle of rum for sixty cents. The municipal court found him guilty and he appealed to the District Court of Aguadilla, which also found him guilty and sentenced him to five days in the municipal jail of Lares. On appeal to this court the case was first heard on the 1st of March, 1920, whereupon the case was reset to discuss whether the insular courts had jurisdiction of the violation of section 2 of the Jones Act.

Section 2 of the Jones Act provides as follows:

"That one year after the approval of this Act and thereafter it shall be unlawful to import, manufacture, sell, or give away, or to expose for sale or gift any intoxicating drink or drug; *Provided,* That the Legislature may authorize and regulate importation, manufacture, and sale of said liquors and drugs for medicinal, sacra-

mental, industrial, and scientific uses only. The penalty for viola-
tions of this provision with reference to intoxicants shall be a fine
of not less than $25 for the first offense, and for second and sub-
sequent offenses a fine of not less than $50 and imprisonment for
not less than ·one month or more than one year; *And provided,
further,* That at any general election within five years after the
approval of this Act this provision may, upon petition of not less
than ten per centum of the qualified electors of Porto Rico, be
submitted to a vote of the qualified electors of Porto Rico, and if
a majority of all the qualified electors of Porto Rico voting upon
such question shall vote to repeal this provision, it shall thereafter
not be in force and effect; otherwise it shall be in full force and
effect.''

This is a crime created by a statute of Congress and
necessarily *prima facie* a crime against the United States.
Section 256 of the Judicial Code of the United States, com-
piled in 1912, provides as follows:

''The jurisdiction vested in the courts of the United States in
the cases and proceedings hereinafter mentioned, shall be exclusive
of the courts of the several states:

''1st. Of all crimes and offenses cognizable under the authority
of the United States;

''2nd. Etc.''

Section 41 of the Jones Act provides:

''That Porto Rico shall constitute a judicial district to be called
'the district of Porto Rico.' The President, by and with the advice
and consent of the Senate, shall appoint one district judge, who
shall serve for a term of four years and until his successor is ap-
pointed and qualified and whose salary shall be $5,000 per annum.
There shall be appointed in like manner a district attorney, whose
salary shall be $4,000 per annum, and a marshal for said district,
whose salary shall be $3,500 per annum, each for a term of four
years unless sooner removed by the President. The district court
for said district shall be called 'the District Court of the United
States for Porto Rico,' and shall have power to appoint all neces-
sary officials and assistants, including the clerk, interpreter, and
such commissioners as may be necessary who shall be entitled to

the same fees and have like powers and duties as are exercised and performed by United States commissioners. Such district court shall have jurisdiction of all cases cognizable in the district courts of the United States, and shall proceed in the same manner, etc.''

It would seem to follow necessarily that the District Court of the United States created in Porto Rico has exclusive jurisdiction of the crime created in section 2 of the Jones Act unless a clear intent to the contrary is otherwise manifested in the Act. A little examination, however, of the jurisprudence of the United States may be of some help.

*United States* v. *Hudson,* 7 Cranch, 31, is probably the leading case on the subject-matter. Therein it is said: ''Of all the courts which the United States may, under their general powers constitute, one only, the Supreme Court, possesses jurisdiction derived immediately from the Constitution, and of which the Legislature cannot deprive it. All other courts created by the general government possess no· jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general government will authorize them to confer,'' and the case of *Turner* v. *Bank of North America,* 4 Dallas, 6 and 10, also shows that the jurisdiction of the courts must be defined. Subsequent cases hold directly or in effect that the jurisdiction of any court must be defined just as the crime must be defined by the power that creates the crime or the court. *Stevenson* v. *Fain,* 195 U. S. 170; *Ex parte Wisner,* 203 U. S. 455.

In *United States* v. *Wilson,* 3 Blatch., 438, Federal Cases No. 16,731, the court said:

''But it is a fundamental doctrine in respect to the federal courts of inferior jurisdiction that they can not take cognizance of criminal offenses of any grade without the express appointment or direction of positive law to enable them to exercise the function bestowed by the constitution over crimes and misdemeanors. There must be a designation by positive law both of the offense and of

the tribunal which shall take cognizance of it. *U. S.* v. *Hudson, supra; Ex parte Bollman,* 4 Cranch, 75; *U. S.* v. *Coolidge,* 1 Wheat. 415; 14 Bishop's Criminal Law, 76–80.''

In the *Case of the Sewing Machine Companies,* 18 Wall. 577, in speaking of the judicial power the court said:

''But the organization of the system and its distribution among such inferior courts as Congress may from time to time ordain and establish within the scope of judicial power always has been and of right must be the work of Congress.''

In *Cary* v. *Curtis,* 3 How. 244, the court said:

''Judicial power although originating in the Constitution is dependent for its distribution and organization and for its mode of exercise entirely upon the action of Congress who possess the sole power of creating tribunals, etc.   \*   \*   \*   and in vesting them with jurisdiction either limited, concurrent or exclusive, and of withholding jurisdiction from them in the exact degree and character which to Congress may seem proper for the public good.''

This case is cited with approval in *Sheldon* v. *Sill,* 8 How. 449, and in *Kentucky* v. *Powers,* 201 U. S. 24, and further it is said in 15 Corpus Juris, 732, note 69:

''The jurisdiction and powers of courts can not be enlarged by intendment so as to embrace subjects not expressed in the law from which jurisdiction is derived.''

In attempting to meet this reasoning the *Fiscal* of this court cites *United States* v. *Pridgeon,* 153 U. S. 48; *Boyd* v. *Great Western Coal & Coke Company,* 189 Federal, 115, and *Ex parte Krause,* 226 Federal, 547. The case of *United States* v. *Pridgeon, supra,* decided merely that the intention of Congress was displayed to make the Nebraska Criminal Code the Criminal Code for Oklahoma. Similarly in the *Boyd Case* the court decided that the Act of Congress extended to Indian Territory certain laws of Arkansas relating to corporations and the court decided that corporations organized

thereunder were not federal corporations because they were in point of fact organized under the laws made for the territory, and in *Ex parte Krause* again the intention of Congress was clearly manifested to make a prior territorial code the existing Penal Code for Alaska.

If we are not mistaken, there does not exist either in Alaska or Indian Territory an independent legislature as in Porto Rico, nor was there such an independent legislature in Oklahoma before its incorporation as a state. There is no question in either of these cases of what court had jurisdiction. Even in the Alaska case there was only a single court having jurisdiction, as the Fiscal's citation from the opinion shows.

We find nothing in the Jones Act to indicate an intention of Congress to establish the offense named in section 2 of said Act as one against The People of Porto Rico in distinction to an offense against the United States. We find nothing in the act indicating that Congress was acting as a local legislature in defining the crime so mentioned in the Act. And in all events the court which should have jurisdiction was not mentioned. On the contrary section 40 of the Jones Act provides:

"That the judicial power shall be vested in the courts and tribunals of Porto Rico now established and in operation under and by virtue of existing laws. The jurisdiction of said courts and the form of procedure in them, and the various officers and attachés thereof, shall also continue to be as now provided until otherwise provided by law; *Provided, however,* That the Chief Justice and Associate Justices of the Supreme Court shall be appointed by the President, by and with the advice and consent of the Senate of the United States, and the Legislature of Porto Rico shall have authority, from time to time as it may see fit, not inconsistent with this Act, to organize, modify, or rearrange the courts and their jurisdiction and procedure, except the District Court of the United States for Porto Rico."

Not only is the jurisdiction of the courts continued as it was before the Act, but the jurisdiction of the District Court of the United States is expressly excluded from the power of the legislature. In section 37 of the Jones Act and other sections thereof the intention of Congress is shown to make the Legislature of Porto Rico the complete legislating power for Porto Rico, thus also excluding the idea that Congress was acting as a local legislature.

The United States District Court for Porto Rico is organized and established by the same Organic Act and no intention on the part of Congress to deprive it of any jurisdiction which would belong to the district courts of the United States is shown. It must have the exclusive jurisdiction provided by section 256 of the Judicial Code until the contrary intent clearly appears. Congress must be presumed as wanting the enforcement of a new crime to be placed in the hands of the officers whose powers in general are the same as in the United States.

Section 55 of the Jones Act likewise continues the jurisdiction of all the courts as they were provided before the act unless otherwise specifically provided.

Also in section 48 when Congress has wanted to give different courts concurrent jurisdiction it has done it in plain language, and under said section the Supreme and District Courts of Porto Rico and the respective judges thereof may grant writs of habeas corpus in all cases in which the same are grantable by the judges of the district courts of the United States.

If Congress were acting as a local legislature, then, of course, the crime defined in section 2 of the Jones Act would be entirely a local matter as the *Krause Case, supra,* decided and the insular courts would then have jurisdiction exclusive of the United States District Court. We think

it would be absurd to suppose that Congress would give the insular courts exclusive jurisdiction in this way.

The *Fiscal* also contends that when Congress provided for a referendum in section 2 it gave The People of Porto Rico the power of making the said section a local law and hence the said section must be considered as in force in Porto Rico as a local law. In the first place section 2 was to go into definite effect one year after its passage unless The People of Porto Rico by a referendum showed some unwillingness to receive this substantive penal law. Now the fact that the people on such a referendum refused to derogate the law does not convert the substantive offense created into an offense against The People of Porto Rico. As we have shown, the legislative powers here are confined to the Legislature until Congress otherwise provides. In the second place, as the authorities show, the crime must not only be defined, but also the court which has jurisdiction.

This was a prosecution begun in the municipal court. If any unnamed local court had jurisdiction it would seem to be the district courts of Porto Rico which are courts of general jurisdiction. Municipal courts necessarily have no more jurisdiction than is specifically defined by the Legislature of Porto Rico. However, our decision is not based on a distinction between the local courts, but squarely on the ground that no court in Porto Rico except the United States District Court has jurisdiction.

The judgment must be reversed and the prisoner discharged.

*Reversed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.