UNITED STATES of America

v.

Edward STEARN, Joseph Doebley, and Michael Doebley.

Criminal Acton No. 06–203–all.

United States District Court, E.D. Pennsylvania.

April 25, 2008.

Fortunato N. Perri, Jr., McMonagle, Perri & McHugh, Louis T. Savino, Jr., Louis T. Savino and Associates, Philadelphia, PA, for Edward Stearn, Joseph Doebley, and Michael Doebley.

Kathy A. Stark, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

## *MEMORANDUM AND ORDER*

JUAN R. SÁNCHEZ, District Judge.

Edward Stearn, Joseph Doebley, and Michael Doebley ask this Court to suppress items seized from five houses, one garage/gym, and two vehicles in two searches on October 6, 2005. The question in this case is whether the affidavit of probable cause shows within its four corners sufficient facts to infer probable cause for the search warrants to issue. It does not. Because I find the affidavit lacked probable cause to support the issuance of four of the five warrants, I will suppress the evidence seized on four warrants issued on October 5, 2005. I will also suppress the evidence seized on two warrants

issued on October 6, 2005, because the affidavit of probable cause supporting the request for those two warrants was based on items recovered on the unreasonable October 5 warrants.

### FACTS

I find the following regarding the seven-paragraph affidavit of probable cause:

1. In the first paragraph, Police Officer Ryan, an experienced narcotics officer in Philadelphia, states he "received information from a confidential informant ... that Joseph Doebley operates a blue and white pickup truck with fancy rims and a rust color Chevy Impala." The statement contains no information about the reliability of the confidential informant, no information as to whether the confidential informant was known to the officer, had ever provided reliable information before, or if the confidential informant knew what cars Joseph Doebley operated by means other than observing him in public.

2. "The C/I states that Doebley sells cocaine powder in weight (meaning fraction of ounces and multiple ounces)." The statement again omits any basis for the confidential informant's information and does not state whether it is the confidential informant or the officer who is defining the word "weight."

3. The next statement in the affidavit is "Joe Doebley is also in the cocaine business with his brother Michael Doebley." The affidavit contains no identifiable source for that information or any corroborating detail.

4. "The C/I stated further that Doebley owns a garage he converted into a gym on 4800 Comly and operates his cocaine business from there and from his house on 4000 Higbee St. The C/I did not know which house on Higbee." The affidavit provides no basis for the confidential informant's information and no particularity as to the addresses of the gym and the house.

5. "The C/I states that Doebley's supplier is Ed Stern [sic] who lives on 4400 Bleigh and 5000 Homestead." Again, the affidavit provides no basis by which an independent magistrate could judge the reliability of the information.

6. During surveillance on September 28, 2005, someone, the affidavit does not say who, identified Joseph Doebley, Michael Doebley, and Ed Stern and identified the address of the gym as 4808 Comly. A blue and white pickup truck with fancy rims was seen parked beside the gym.

7. The affidavit states Joseph Doebley is the listed owner of 4808 Comly and Jane Betty Doebley of 4049 Higbee. The affidavit provides no information linking Jane Betty Doebley's address to any illegal activity except for the vague, unsupported information of the confidential informant earlier that Joseph Doebley "operates his cocaine business ... from his house on 4000 Higbee St."

8. The second paragraph of the affidavit then tracks the movements of Joseph Doebley, apparently also on September 28, 2005, although the affidavit was not filed until October 5, 2005. According to the affidavit, Joseph Doebley left 4808 Comly in a rust-colored Chevy Impala, which the surveillance officer then lost in traffic on Torresdale.

9. A confidential informant telephoned a number and then conducted a controlled buy under the supervision of the police officers at Higbee and Cottage streets of $150.00 worth of cocaine from Joseph Doebley, who was driving the Chevy Impala. The affida-

vit contains no information indicating whether the confidential informant is the same as that in paragraph one or not.

10. The third paragraph details following Doebley after the controlled buy to Mascher and Lippincott, where he met a Hispanic male on the corner. The Hispanic male talked on a cell phone, then Doebley returned to his car and then entered a residence on the 100 block of West Lippincott. Doebley was then followed from Lippincott to a cemetery at 4200 Front Street where, at 8:25 p.m., Joseph Doebley exchanged something with the white male operator of a white Jeep Cherokee. Both cars were then lost in traffic.

11. The fourth paragraph details surveillance at 4808 Comly street on October 4, 2005. Officer Vega saw "Doebley," not specifying which Doebley brother, in the side yard at 4808 Comly with several other white males working on a car. The blue and white pickup truck was also there. Doebley and other men were "in and out of 4808 Comly and the detached garage at the rear."

12. One of the white males in the group "spoke with Doebley and entered a maroon Olds parked on the street." A police officer at Cheltenham and Hegerman observed the unidentified white male deliver a clear baggie of cocaine to a buyer. Officer Vega saw the unidentified white male return to 4808 Comly, meet with "Doebley," count out and hand currency to Doebley, who entered 4808 Comly and left after a brief stay. The affidavit does not name which Doebley spoke with the unidentified male and then apparently received money from him. Nor does the affidavit aver the unidenti-

fied suspect was constantly under observation from the time he left 4808 Comly until he returned.

13. The fifth paragraph of the affidavit of probable cause details the movements of one of the Doebleys, it doesn't say which one but a fair inference is Joseph Doebley, from 7:20 p.m. on October 4, 2005, through 7:15 a.m. on October 5, 2005. Doebley left in the blue and white pickup truck, was followed to a Wawa at Levick and Torresdale, then to the rear of 2000 Shawn St., and then lost in the area. Some unspecified time later, Doebley was observed on State Road, followed to 5000 Homestead Street, and then followed to 4808 Comly where Doebley closed and locked the gate to the driveway. Doebley was followed back to 5000 Homestead, where he parked and entered a house on that block. At some unspecified time later Doebley was followed from 5000 Homestead to 4000 Higbee where a police officer saw him park "in the rear driveway near 4049 Higbee. Doebley then entered the rear yard of 4049 Higbee that contained a white pit bull. Doebley opened the rear garage door of 4049 Higbee and entered at 11:50 p.m." Without any foundation establishing a connection to the warrant, the affidavit recites 5038 Homestead is owned by Ruth Nolan, "4049 Higbee is listed as a co-owner address and the water bill for 5038 Homestead is mailed to 4049 Higbee St." The affidavit contains no facts from which the disinterested magistrate could have concluded that illegal activity was presently afoot at any of the houses either Doebley visited that night.

14. Officer Beck resumed surveillance on "5000 Homestead" at 4:45 p.m. on

October 5, 2005. Michael Doebley left 5019 Homestead Street in a grey Jeep Grand Cherokee and drove to 4808 Comly. Michael Doebley entered 4808 Comly and left with Joseph Doebley. The brothers returned to 5019 Homestead. Joseph Doebley left 5019 Homestead and entered 5022 Homestead. An unidentified white male from a parked black Ford Expedition entered 5022 Homestead. Joseph Doebley left 5022 Homestead and rode with the unidentified white male in the black Ford Expedition to 4808 Comly street. Doebley then drove the blue and white pickup truck back to Homestead Street. "Doebley then goes into 5019 Homestead, 5017 Homestead, Doebley used keys to enter 5022 Homestead." The affidavit also avers Doebley used keys to enter 5028 Homestead and Doebley entered 5030 with a white female where he remained for an hour. Doebley entered 5022 at an unspecified time and stayed until 8:15 p.m. The paragraph concludes with a listing of the registered owners of 5017, 5019, 5022 and 5028 Homestead Street without disclosing the source of that information. Also without a source is the information included that Michael Doebley had two prior arrests for PWID [possession with intent to deliver] and Edward Stern had three prior PWID arrests. No detail in this paragraph identifies any action which could be read to be illegal.

15. The final paragraph of the affidavit outlines Officer Ryan's experience and training as a narcotics officer for more than a decade. The affidavit concludes Officer Ryan alleges "the facts outlined in the preceding paragraphs show that there is probable cause to believe that 4049 Higbee St.,

4808 Comly St., 5017 Homestead, 5019 Homestead St., 5022 Homestead St., and 5038 Homestead St .... [are] being used to store cocaine powder for street sales from [a cell phone] and from 4808 Comly St."

On October 6, 2005, the investigating officer added 10 paragraphs to the original seven paragraph affidavit of probable cause to support an application for four additional search warrants. Four paragraphs detail activities of Michael Doebley, Joseph Doebley, and Edward Stearn and others on October 6, 2005. The final 10 paragraphs describe the items seized during the searches conducted on warrants signed on October 5, 2005 and executed on October 6, 2005.

I find the following regarding the amended affidavit of probable cause:

1. The first added paragraph recites that on the morning of October 6, 2005, federal agents raided a gentlemen's club at the corner of Homestead Street and State Road, "adjacent to 50000[sic] Homestead St."

2. The second paragraph describes surveillance of 4049 Higbee St. An officer saw the white/blue pickup truck parked in front shortly after noon. At 2:00 p.m., Joseph Doebley left 4049 Higbee St. and drove the pickup to a mobile phone store at Cottman and Bustleton avenue. From there Joseph Doebley went to Strawbridge's at the Roosevelt mall.

3. The third paragraph states at 3:15 p.m. a police officer "met with the C/I and placed a phone call" during which he [the C/I] told the answering male voice he wanted "a quarter (meaning a 1/4 ounce of cocaine)." The C/I was told to meet at Comly and Cottage in 30 minutes "when he was done with the store." "Joseph Doebley was then

followed to a tool rental store at Wheatsheaf and Thompson and a series of phone calls took place and Doebley said he would be there in fifteen minutes. Joseph Doebley was followed back and lost in the area of Comly and Torresdale Ave at approx. 4:40 p.m." The affidavit is silent as to whether the confidential informant's purchase of a quarter of an ounce was ever consummated or whether the confidential informant is the same mentioned in the first and second paragraphs of the original affidavit.

4. The fourth and final paragraph of the supplemented affidavit with information independent of the warrants issued on the basis of the first affidavit of probable cause details the movements of several people between 3:15 p.m. on October 6, 2006, when surveillance began, until 4:40 p.m. The movement on Homestead street begins with the federal agents leaving the gentlemen's club at 3:30 p.m. Then Edward Stearn, Michael Doebley, and Chris Simon left 5019 Homestead and entered 5020 Homestead followed by "three girls." The women left 5020 Homestead after half an hour. Michael Doebley is described as leaving 5022 Homestead and entering 5038 Homestead, leaving 5038 Homestead, entering 5034 Homestead, and returning to 5022 Homestead. Michael Doebley goes to the driver's side of a grey Jeep Grand Cherokee and returns to 5022 Homestead. Michael Doebley left 5022 Homestead and went to 5038 Homestead before returning to 5022 Homestead. Then Stearn left 5022 Homestead, entered 5019 Homestead, and left with clothes and a bag which he took to a single cab, black truck. At the same time, Michael Doebley and Chris Simon left 5022 Homestead carrying white trash bags to the grey Jeep Grand Cherokee. The Cherokee and the truck left the block at the same time, going in different directions. The black truck, operated by Stearn "is lost South on State Rd." The Jeep Grand Cherokee was stopped by marked highway patrol units and Michael Doebley and Simon were detained. "Doebley has a large amount of USC [United States Currency] on his person."

5. A fair inference is that the sight of the federal agents leaving the gentlemen's club may have led to the departure of the Doebley, Stearn, Simon, and others from the houses on Homestead street.

6. The next five supplemental paragraphs detail the fruits of the previous day's searches at 5019, 5038 and 5022 Homestead and 4049 Higbee: illegal narcotics, firearms, currency, packaging, and paraphernalia.

7. The sixth added paragraph details the search of 4048 Comly (mistakenly referred to as 4049 Comly) from which the white/blue pickup truck and the Impala were seized. "No narcotics or USC was recovered from this location."

8. The final added paragraph states 5020 and 5034 Homestead were secured pending a warrant.

## DISCUSSION

The Fourth Amendment insures "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons or things to be seized." U.S. Const. amend. IV. The requirement applies both to arrest and search warrants. *Wong Sun v. United States*, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The Fourth Amendment allows "the usual in-

ferences which reasonable men draw from evidence .... Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." *Id.* at 14, 68 S.Ct. 367.

Since the earliest days of this nation, "[a]ll the facts necessary to constitute this probable cause must appear upon oath or affirmation. It is not necessary indeed that there should be positive proof of every fact constituting the offence ..." *Ex parte Bollman* 8 U.S. 75, 110, 4 Cranch 75, 2 L.Ed. 554 (1807) (granting a writ of habeas corpus as to location of prosecution).

The Supreme Court has held "[a] sworn statement of an affiant that 'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises" is insufficient to support probable cause. *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933) (holding "an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough"). The Court found inadequate an affidavit which recited the officers had received "reliable information from a credible person and believe[d]" heroin was stored in a home. *Aguilar v. Texas,* 378 U.S. 108, 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ The Court held "[s]ufficient information must be presented to the magistrate ... to determine probable cause; his

action cannot be a mere ratification of the bare conclusions of others .... [T]o ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits." *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A reviewing court must determine only that the magistrate judge had a "substantial basis" for concluding probable cause existed to uphold the warrant. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. The Third Circuit defines a court's role as determining whether "the affidavit provides a sufficient basis for the decision the magistrate judge actually made." *United States v. Jones,* 994 F.2d 1051, 1057 (3d Cir.1993). The Court describes a court's role in reviewing the magistrate judge's decision as limited, but explains "deference to the judge's determination does not simply mean that reviewing courts should rubber stamp a magistrate's conclusions." *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir.2000).

The magistrate must "make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238, 103 S.Ct. 2317. In *Gates,* the Supreme Court stated "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual context—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. 2317. The Third Circuit counsels "[t]he supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." *United States v. Conley,* 4 F.3d 1200,1206 (3d Cir. 1993) (citing *Gates,* 462 U.S. at 230–31, 103 S.Ct. 2317). "[S]tatements in an affidavit may not be read in isolation—the affidavit must be read as a whole." *Id.* at 1208

(quoting *United States v. Brown*, 3 F.3d 673, 678 n. 5 (3d Cir.1993)). To uphold a magistrate judge's probable cause determination, the Court must determine only that the judge had a substantial basis for his finding. *Whitner*, 219 F.3d at 296.

■ After *Gates*, the two prongs established in *Aguilar*, and *Spinelli*,[1] requiring proof of the "veracity" and "basis of knowledge" of information used in an affidavit to obtain a search warrant, remain as factors in a totality-of-the-circumstances test. *Gates*, 462 U.S. at 238, 103 S.Ct. 2317.[2] The Supreme Court has directed that "although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Conley*, 4 F.3d at 1205 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

■ A reviewing court may consider only evidence within the four corners of the warrant application to ensure the magistrate had a substantial basis for concluding probable cause existed. *Jones*, 994 F.2d at 1055 (citations omitted).

■ The seminal information in the affidavit of probable cause in the case at hand is attributed to a confidential informant. No court has defined the quantity or quality of indicia of reliability which must be demonstrated by a confidential informant, but every court requires at least lip-service to the concept of reliability. *Gates*, 462 U.S. at 238, 103 S.Ct. 2317; *Aguilar*, 378 U.S. at 114, 84 S.Ct. 1509. Among the indicia of reliability the Third Circuit has approved is the identification of multiple confidential informants who have provided the Government with reliable information in the past and who are described as willing to testify at trial. *United States v. Yusuf*, 461 F.3d 374, 380–81 (3d Cir.2006). The Third Circuit approved a warrant in which the affidavit stated "a reliable confidential informant had purchased methamphetamine on several occasions from John Doe, at Doe's residence/office, or from a Volkswagen automobile parked in front.... the most recent methamphetamine purchase by the informant had occurred within the preceding 48 hours." *Doe v. Groody*, 361 F.3d 232, 235 (3d Cir. 2004).

The Third Circuit agreed with a district court "the bare assertion by the police affiants that they believed the housekeeper to be reliable does not alone suffice." *United States v. Williams*, 3 F.3d 69, 72 (3d Cir.1993). The Court, however, reversed the suppression order because it concluded from the four corners of the affidavit the confidential informant was a housekeeper in a motel whose information "was akin to the proverbial 'disinterested witness' whose reliability has been cele-

---

1. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

2. Affidavits need not be entirely accurate. *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Affidavits must, of course, be truthful: "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct.... But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Gates*, 462 U.S. at 235, 103 S.Ct. 2317. Only when the truthfulness of an affidavit is challenged may a reviewing court conduct an evidentiary hearing. *Ex parte Bollman*, 4 Cranch 75, 8 U.S. 75, 110, 2 L.Ed. 554 (1807) (holding "[n]o belief of a fact tending to show probable cause, no hearsay, no opinion of any person however high in office, respecting the guilt of the person accused, can be received in evidence on this examination").

brated through the years in countless closing arguments and jury instructions." *Id.* The Court held "[b]ased on ... corroboration, the apparent disinterestedness of the informant, and the absence of any information suggesting unreliability, we believe the magistrate was entitled to credit the housekeeper's information." *Id.* at 73. Even when the affidavit merely states the "original source of the information was correctly represented to be a confidential source who was reliable and who was believed by his law enforcement contact to be reliable based on several experiences in the past when the information provided had been subsequently confirmed," the Court has affirmed the basis for the warrant. *United States v. Calisto,* 838 F.2d 711, 715 (3d Cir.1988).[3]

In this case, the affidavit provides no assertion the officers believed the confidential informant, no history of past cooperation by the informant, no drug buys by the informant, and no inside information supplied by the informant.

■ The warrants issued on both October 5 and 6, 2005, contain the requisite specificity of the places to be searched and the things to be seized to satisfy the Fourth Amendment, but the question remains whether the affidavit provides probable cause to make the searches reasonable. "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant." *United States v. Hodge,* 246 F.3d 301, 305 (3d Cir.2001) (citations omitted). Instead, "[a] court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Id.*

In drug-related cases, numerous courts of appeals have held evidence of drug crimes is likely to be found in drug dealers' residences. *See Whitner,* 219 F.3d at 298 (citing cases in accord from the United States Courts of Appeals for the First, Second, Fourth, Sixth, Seventh, Eighth, Ninth, and District of Columbia Circuits). The Third Circuit reasoned "evidence associated with drug dealing needs to be stored somewhere, and ... a dealer will have the opportunity to conceal it in his home." *Id.* at 297. In *Whitner,* the defendant was evasive about where he lived leading to a "reasonable inference [he] was attempting to conceal the existence of the apartment and his association with the apartment. This attempt at concealment when combined with the other information ... set forth in [the] affidavit logically suggests [the defendant] was storing some evidence of illegal activity at the apartment." *Id.* at 299.

---

3. Other indicia of reliability found in the cases include "other supporting information in the ... affidavit, independent of the confidential informant's reliability," *Skunda v. Pennsylvania State Police,* 47 Fed.Appx. 69, 73 (3d Cir.2002); a "confidential informant [who] had previously made numerous controlled narcotics purchases, which led to the arrest of several persons," *United States v. Dicks,* 2008 WL 397298, *4 (3d Cir.2008); a confidential informant who "had testified at one trial, and that testimony lead to the conviction of ... a methamphetamine dealer.... had provided additional information about other drug dealers.... [and had been] interviewed on three different occasions to assess the accuracy of his information," *United States v. Woods,* 254 Fed.Appx. 889, 891 (3d Cir.2007); a confidential informant, who had a history of providing reliable information, corroborated by a controlled buy, *United States v. King,* 182 Fed.Appx. 88, 90–91 (3d Cir.2006); and, informants who were said to have "provided accurate tips in the past, with his information resulting in various arrests and convictions" supplied "the requisite substantial basis for concluding that probable cause existed," *United States v. Pearson,* 181 Fed.Appx. 192, 195 (3d Cir.2006).

Probable cause "can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir.2002) (citations omitted). The affidavit in *Burton* stated "[p]ersons involved in large-scale drug trafficking and those who assist them frequently conceal in locations known as 'stash-houses' caches of drugs, drug paraphernalia, firearms, large amounts of currency, and other evidence of drug dealing." *Burton, Id.* at 105. In *Hodge*, "[t]he amount of crack cocaine Hodge possessed indicated that he was involved in selling drugs, rather than merely using them." *Hodge*, 246 F.3d at 306. The Court found "an experienced and repeat drug dealer who would need to store evidence of his illicit activities somewhere.... It is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home." *Id.*

Other cases in which a search of an unrelated premises has been upheld involved large quantities of drugs or contraband. In *Whitner*, the quantity of drugs at issue was 5.75 pounds. *Whitner*, 219 F.3d at 292. In *Burton*, the quantity of drugs involved was more than 1000 grams, and the Third Circuit stated "[w]hile we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home, ... that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction." *Burton*, 288 F.3d at 104. In *Hodge*, the Third Circuit found "significant evidence from which the magistrate judge might" conclude the defendant kept his drugs at home. *Hodge*, 246 F.3d at 306. After

finding the quantity of drugs, the prearranged delivery time, the method of carrying drugs, and the use of a rental car corroborated the defendant's role as an organized drug dealer, the Third Circuit stated "[i]t is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home." *Id.* The affidavit in this case itemized sales of only small quantities of drugs, fractions of ounces, and none of the details of the organization such as those in *Hodge* justifying a search of residences.

The final inference which could be extracted with some effort from the amended affidavit presented for the second set of warrants signed on October 6 is the suggestion the federal raid on a nearby establishment engendered flight by the suspects from Homestead Street. Nothing in the supplemented affidavit communicates haste or fear except the bald assertion in the fourth new paragraph, "[y]oung W/M's [white males] carrying backpacks also exited 5019 Homestead and fled East bound." None of the suspects here charged are alleged to have fled. Even if they had, flight alone give rise, at best, to a justification for a *Terry*[4] stop. If a suspect flees when approached by an officer, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The Supreme Court has never held unprovoked flight alone justifies a stop; there must be some "other indicia of wrongdoing" to provide reasonable suspicion. *Id.* at 125–26, 120 S.Ct. 673.

The Third Circuit examined the surrounding factors which would support a *Terry* stop on the occasion of flight in

---

4. *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*United States v. Bonner*, 363 F.3d 213 (3d Cir.2004). The Court stated the defendant "did not simply flee upon noticing police, nor did he simply refuse to cooperate during a consensual encounter. Bonner fled from a lawful traffic stop.... He continued fleeing despite repeated orders to stop, and he did not stop running until he was tackled." *Id.* at 218. The Court held "flight from a non-consensual, legitimate traffic stop (in which the officers are authorized to exert superintendence and control over the occupants of the car) gives rise to reasonable suspicion." *Id.*

Even inferring the presence of the federal agents provoked the departure of the Doebleys and Stearn, nothing in the supplemented affidavit suggests any police officer approached the defendants until they were well away from the houses on Homestead Street and there is no indication any defendant disregarded an order to stop. If the suggestion of flight is not sufficient to raise a "reasonable suspicion," then it cannot be used as the basis for probable cause to satisfy the Fourth Amendment to allow residential searches.

When I return to the standard of review by which I must determine whether the warrants issued on October 5 and October 6, 2005, were properly supported by probable cause in the affidavit, I recognize, pursuant to *Gates*, I am required to afford the issuing magistrate's judgment great deference. Even under that standard, I am unable to find sufficient evidence of probable cause within the four corners of the affidavit to support the search warrants for 4049 Higbee Street, 5022, 5019, and 5038 Homestead Street. The affidavit contains not a shred of evidence regarding

the reliability of the "informant," no exchanges are witnessed in the vicinity of the houses on Homestead or Higbee streets, no buys were made from or near the houses, and no one was seen leaving any of the houses before going to a drug sale.

The Third Circuit would allow a disinterested magistrate to infer the houses were being used to "stash" drugs when large quantities of drugs are involved, *Whitner*, 219 F.3d at 292; when sales are made in the vicinity of the dealers's houses, *Hodge*, 246 F.3d at 306; or, when some other recitation in the affidavit support the inference a large-scale drug operation is involved. *Burton*, 288 F.3d at 105. None of those factors is present in this affidavit. The two detailed sales are of small quantities of cocaine, an eighth of an ounce and a quarter of an ounce, not requiring a convenient place to hide large quantities, neither of the recorded sales was made in the vicinity of any of the houses searched; and, the affidavit reports no corroborated buys from the houses to be searched. For those reasons, I find the warrants allowing the search of the houses on Homestead and Higbee streets not supported by probable cause in the original affidavit.[5]

█ The October 6, 2005 warrants for 5020 and 5034 Homestead Street and for blood and saliva from Stearn are tainted because the affidavit of probable cause is the same with the addition of information about items seized under the October 5 warrants which I have found invalid. The affidavit failed to support probable cause standing alone, adding information about the items seized cannot create probable

---

**5.** The good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 922 (1984), does not apply because the defects in this case were in the affidavit to establish probable cause. The warrant found defective in *Leon* was based on a much more extensive and detailed affidavit of the police investigation. *Leon*, 468 U.S. at 901–02, 104 S.Ct. 3405. *Leon* specifically held the affidavit at issue was a not a "bare bones' affidavit." *Id.* at 926, 104 S.Ct. 3405.

cause. Evidence acquired later as the result of an illegal search is "fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police." *Wong Sun*, 371 U.S. at 488, 83 S.Ct. 407.[6] The Third Circuit has held:

> An unlawful search **never** can be justified by its fruits. Many years ago, even without the benefit of the Fourth and Fifth Amendments of the Bill of Rights, an English court denounced the entry into a man's home to obtain evidence with these words: "To enter a man's house by virtue of a nameless warrant, in order to procure evidence, is worse than the Spanish Inquisition; a law under which no Englishman would wish to live an hour; it was a most daring public attack made upon the liberty of the subject." *Huckle v. Money*, 95 Eng.Rep. 768, 769 (1763).

*Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir.1996) (emphasis in the original). The warrants of October 6 are fruit of the poisonous tree and, hence, unsupported by probable cause.

■ The warrant for 4808 Comly Street presents a separate problem. The only two drug sales documented in the affidavit had a remote nexus to 4808 Comly street. The unidentified male and Joseph Doebley each left from 4808 Comly before making the sales, although neither was constantly observed from 4808 Comly Street to the place of sale, and could have procured the drugs elsewhere. I find the question a close call, but applying the standard of great deference to the issuing magistrate, I find the warrant issued for 4808 Comly Street supported by probable cause.

**6.** *Nardone v. U.S.*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939) (holding once a defendant proves a government search is illegal, the government may avail itself of an

■ The final two warrants on October 6, 2006, were for the blue and white Chevrolet pickup truck and the rust-colored Impala which were recovered from 4808 Comly street on the October 5 warrant. The affidavit established some slight nexus between 4808 Comly street and the two drug sales. The nexus between Joseph Doebley and the two vehicles is stronger because Doebly was observed driving the blue and white truck and making a drug sale out of the Impala. Because I find a slight but discernible nexus between 4808 Comly Street and the two drug sales, one of which was made by Joseph Doebley out of the Impala, I will affirm the seizure of the two vehicles under the warrant issued on October 5 and the search of the two vehicles on the two warrants signed on October 6.

Because I find a number of the searches conducted on October 6, 2005 unreasonable under the Fourth Amendment, I will suppress the evidence seized during those searches. Suppression is the time-honored remedy "to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person.... this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search." *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The exclusionary prohibition extends as well to the indirect as the direct products of such invasions. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 391, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

In sum, any evidence seized on warrants issued for 4049 Higbee Street, 5022, 5019, 5038, 5020, and 5034 Homestead street., as

opportunity to demonstrate the information came from an independent source and was not a product of the tainted search).

well as the warrant for blood and saliva from Stearn is suppressed. The government may proceed with any evidence seized during the search of 4048 Comly street and the blue and white Chevrolet truck and the rust-colored Impala.

## CONCLUSIONS OF LAW

1. The only evidence in the affidavit of probable cause supported by fact are two drug sales, one by an unknown white male and one by Joseph Doebley.

2. The unknown white male was seen at 4808 Comly before the sale but there is no assertion he retrieved anything from 4808 Comly before making the sale.

3. During the controlled buy, Joseph Doebley left 4808 Comly, but was lost in traffic for an unspecified length of time before selling an eighth of an ounce of cocaine to a confidential informant. Only after other stops did Doebley return to 4808 Comly.

4. The affidavit makes no mention of the reliability of the confidential informant, no suggestion he or she was known to Officer Ryan, and no suggestion he or she has provided reliable information in the past.

5. The information attributed to the confidential informant contains no internally corroborating detail such as information about the interior of the houses, when and where the informant saw any of the Defendants make drug sales, information about the packaging or quantities of drugs, or where they were stashed.

6. The failure of the affidavit to include any detail corroborating the information allegedly provided by a confidential informant gives rise to a serious suspicion about even the existence of such an informant.

7. No movement into and out of any of the Homestead Street houses or 4049 Higbee Street contains a single indicia of illegal activity. People come and go, frequently, restlessly, perhaps even furtively, but no one carries anything into or out of any of the houses until October 6, 2005 when the amended affidavit recites the Doebleys, Stearn, and Simon left with bags. No officer suggests that in his training and experience any bag carried by any of the Defendants was a known drug concealment device.

8. The affidavit contains no detail, such as moving quickly, running, furtiveness, or other observation supporting flight on the afternoon of October 6. Even if I were to infer the suspects were fleeing Homestead street, flight is not probable cause for a search.

9. Warrants unsupported by probable cause are not reasonable under the Fourth Amendment.

10. Any evidence seized pursuant to the unsupported warrants may not be used against the defendants.

An appropriate order follows.

### *ORDER*

And now this 25th day of April, 2008, the Motions of Defendants Joseph Doebley, Michael Doebley, and Edward Stearn to Suppress Evidence (Documents 80, 87, and 90) are GRANTED in Part and DENIED in part. The evidence seized pursuant to the following warrants is SUPPRESSED:

1. Search warrant 119893 (4049 Higbee Street);

2. Search warrant 119894 (5022 Homestead Street);

3. Search warrant 119896 (5019 Homestead Street);

4. Search warrant 119897 (5038 Homestead Street);

5. Search warrant 119898 (5020 Homestead Street);

6. Search warrant 119899 (5034 Homestead Street); and,

7. Search warrant 121405 (blood and/or saliva from Edward Stearn).

Evidence seized pursuant to the following warrants is ADMISSIBLE:

1. Search warrant 119892 (4808 Comly Street);

2. Search warrant 120209 (Blue Chevrolet Truck, PA tag YRF2313, VIN 1GCDC14H3KE104762); and,

3. Search warrant 120210 (burgundy Chevrolet, PA tag FTH9167, VIN 1 G1 EL52P5TR177014)

Joseph Doebley's Motion for Discovery of Confidential Informant and Motion for Additional Discovery (Documents 88 and 89) are DENIED as moot without prejudice to their reassertion.