# United States Court of Appeals
## For the First Circuit

No. 12-1597

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL LEWIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Stahl, and Thompson,
Circuit Judges.

Jeffrey M. Brandt, with whom Robinson & Brandt, P.S.C., was on
brief, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

October 4, 2013

THOMPSON, **Circuit Judge**. This case requires us to determine whether a prisoner against whom a federal detainer has been lodged and who is erroneously detained by State authorities following the dismissal of State criminal charges is in federal custody for purposes of the Speedy Trial Act, 18 U.S.C. § 3161(b). We conclude that the appellant did not enter federal custody until October 3, 2011, the date on which he was arrested by United States Marshals and brought before a federal judge. As such, his October 26, 2011, indictment occurred within thirty days of his arrest on federal charges and, therefore, did not violate the Speedy Trial Act. We also reject the appellant's claim that the district court erred by failing to impose any sanctions against the federal government as a result of its purported failure to notify him that it had lodged a federal detainer against him.

## I. BACKGROUND

The facts of this matter are relatively straightforward. The parties stipulated to many of them and neither party challenges any of the additional facts found by the district court. On August 6, 2011, deputies of the Cumberland County Sheriff's Office arrested Michael Lewis ("appellant") at a gravel pit in Standish, Maine.[1] It appears that at the time of his arrest the appellant had a firearm on him, and that he had been convicted of at least

---

[1]There is no indication that any federal agent orchestrated, participated in, or was even aware of the arrest.

-2-

one felony in the past. Following his arrest, the State of Maine ("State") charged appellant with the following criminal counts: Possession of a Firearm by a Felon in violation of 15 M.R.S.A. § 393(1)(A-1); Theft by Receiving Stolen Property in violation of 17-A M.R.S.A. § 359(1)(B)(2); and Carrying a Concealed Weapon in violation of 25 M.R.S.A. § 2001-A(1)(B). The appellant was granted but did not post bail for reasons not appearing in the record. Thus, he remained in the State's custody at the Cumberland County Jail.

During the afternoon of Friday, August 26, 2011, the United States ("government") filed a complaint in the United States District Court for the District of Maine charging the appellant with one count of violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon. An arrest warrant on the federal charges was issued that same day. Later that afternoon the government prosecutor contacted the State prosecutor to advise him that a federal complaint had been filed against the appellant. The State prosecutor responded that he would "promptly dismiss the related state charges." The government prosecutor also told the appellant's State-appointed defense counsel that a complaint against his client had been filed in federal court. The record does not reveal whether the government also informed defense counsel that it had been advised the State intended to dismiss its charges "promptly."

The government lodged a federal detainer at the Cumberland County Jail at 9:34 a.m. on the next business day, Monday, August 29, 2011.[2]  Later that same day, the State voluntarily dismissed all its charges against the appellant.  What occurred next (or, more accurately, failed to occur) sets the stage for this appeal.

The parties stipulated as to the procedures generally followed by the Cumberland County Jail when a federal detainer is lodged against one of its inmates.  Once the Jail is advised that the State charges have been dismissed, it contacts the United States Marshals Service to let them know the State charges are no longer pending.[3]  The Marshals Service in turn notifies both the appropriate United States District Court and the United States Attorney's Office.  Thus, had the normal and customary practice been adhered to in this instance, the Jail should have received notice of the dismissal of State charges on or soon after August 29 and passed this information along to the United States Marshals so the appellant could be placed into federal custody.

There is no question that the customary procedures broke down in this case, as the appellant languished in the Cumberland

---

[2]Although the parties agree on the exact date and time that the detainer was lodged with the Jail, the document itself is not in the record.  Indeed, it is not clear whether that document still exists.

[3]It appears from the record that notice of the dismissal of State charges is provided by the State court.

County Jail for the next month. During this time, the Jail never notified the United States Marshals Service that the State charges had been dismissed. As the Marshals were not informed of the dismissal, they did not notify the U.S. Attorney's Office that the State charges had been dismissed and that the appellant should be taken into federal custody. Thus, the appellant remained incarcerated by the State despite the fact it had dismissed all charges against him.

The record does not provide any hint as to how long this state of affairs would have persisted if not for the intervention of an outside actor. Finally, on September 26, 2011, the appellant's girlfriend phoned the U.S. Attorney's Office, stated that all State charges had been dismissed, and inquired as to why the appellant was still sitting in the Cumberland County Jail.[4] It appears this phone call prompted action on the appellant's case, as the government prosecutor assigned to the case telephoned the Jail that same day. Officials at the Jail told her the appellant was still being held on the State charges. During this conversation the Jail specifically informed the government prosecutor it was not holding the appellant as a result of the federal detainer.

---

[4]The stipulated facts do not indicate whether the appellant's girlfriend contacted or made an attempt to contact the State authorities in addition to the U.S. Attorney's Office, nor did the district court make any findings of fact in this regard.

Also on September 26, the government prosecutor contacted the State prosecutor via electronic mail to inquire as to the status of the State charges. The State's attorney reported that the State charges were dismissed on August 29, 2011, and in reply the government's prosecutor stated the Jail was still holding the appellant on the State charges. From the tenor of the email messages introduced as exhibits at the district court, it certainly appears the State's attorneys were completely unaware that the appellant was still in State custody. In further email correspondence on Tuesday, September 27, 2011, the State prosecutor informed the government's prosecutor that he would contact the State court to verify it had received the State's dismissal. He also promised to ask the State court to notify the Jail of the dropped charges.

While the record shows that there was some additional email correspondence between the State and government attorneys regarding the status of the case over the next several days, no official action was taken and the appellant remained in State custody for the next week. Finally, on October 3, 2011, the State prosecutor called the State court to have a copy of the dismissal faxed to the Jail. The State's attorney then confirmed with an officer at the Cumberland County Jail that the Jail had in fact received notification of the dismissal, and he advised the government prosecutor of these developments through email.

Apparently, once the Jail finally received notice of the dismissal on October 3, it promptly contacted the United States Marshals in accordance with its usual protocol. Thereafter the government acted swiftly, as on the same day it arrested the appellant on the federal warrant and brought him before a federal judge for his initial appearance.[5] A federal grand jury returned a one-count indictment on October 26, 2011, charging the appellant with violating 18 U.S.C. § 922(g)(1). The appellant remained in federal custody between October 3 and October 26, as he waived his right to contest the government's motion to detain him pending trial.

The appellant subsequently filed a motion to dismiss the federal indictment for violation of the Speedy Trial Act and for an alleged violation of his right to a speedy trial under the Sixth Amendment of the United States Constitution. The appellant argued that even though he was being held at a State facility from August 6 to October 3, the dismissal of all State charges and the lodging of the federal detainer on August 29, 2011, was the functional equivalent of an arrest by federal authorities. The appellant took

---

[5]The Court takes judicial notice that the return section on the arrest warrant indicates that the warrant was executed on October 3, 2011. See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."). The executed arrest warrant with the signature of the arresting officer was filed with the district court on October 5, 2011.

the position that the indictment should be dismissed because it was not issued within thirty days from the date federal custody began, as the Act requires.

The district court held a hearing and denied the appellant's motion on January 25, 2012. Two days later, and with the government's consent, the appellant entered a conditional guilty plea whereby he reserved his right to appeal the denial of his motion to dismiss. The district court approved and entered the conditional plea on February 3, 2012. Judgment entered on May 11, 2012. This timely appeal followed.

## II. DISCUSSION

The appellant insists that the lodging of the federal detainer on the morning of August 29, 2011, combined with the dismissal of State charges later that day, acted as a de facto arrest by federal authorities that triggered the thirty-day "arrest to indictment" time limit under the Speedy Trial Act, 18 U.S.C. § 3161(b). In the appellant's view, once the State dismissed its charges against him, the federal detainer became the functional equivalent of an arrest because it was the sole legitimate basis for the State to continue holding him. Using August 29 as the starting point, he then argues that the government violated the Act

by failing to indict him within thirty days, necessitating dismissal of the indictment.[6]

Separately, the appellant posits that the government also violated the Act by failing to notify him of the detainer. While conceding that dismissal of the indictment is not an appropriate remedy for any such violation, the appellant asks us to remand this matter to the district court for imposition of an appropriate sanction.

In rejoinder, the government argues that the Speedy Trial Act does not apply until an individual is arrested or served with a summons with respect to a federal crime. According to the government, the federal detainer did not function as a federal arrest because the State continued to exercise jurisdiction over the appellant. The government further argues that the appellant was never in custody as a result of a federal charge prior to October 3, 2011, because the Cumberland County Jail was actually holding him on the previously-dismissed State charges. The government, therefore, argues that because the thirty-day arrest to indictment time limit did not begin to count down until October 3, the October 26 indictment came well within the Speedy Trial Act's deadline.

---

[6]The appellant does not press a constitutional argument in this appeal.

As to the appellant's request for sanctions, the government argues that this appeal constitutes the first time he has sought any sanction other than dismissal. Therefore, the government urges us to find the appellant has waived any objections to the district court's failure to impose sanctions.

## A. Speedy Trial Act

The district court's denial of a motion to dismiss predicated upon the Speedy Trial Act is reviewed de novo with respect to questions of law. United States v. Maryea, 704 F.3d 55, 63 (1st Cir. 2013). Factual findings, however, will only be overturned where there has been "clear error." Id. The parties here have stipulated to many of the operative facts, and neither party has challenged any of the facts found by the district court at the hearing on the motion to dismiss. As such, we review the legal questions de novo.

The main thrust of the appellant's appeal is centered on the thirty-day arrest to indictment time limit set forth in the Speedy Trial Act, 18 U.S.C. § 3161(b). The critical question to be answered is whether or not the lodging of the federal detainer at the Cumberland County Jail prior to the dismissal of State charges constituted a federal "arrest" so as to begin the thirty-day countdown. This issue is dispositive, as the government's October 26, 2011, indictment clearly did not comply with the Speedy Trial Act if the clock began ticking on August 29.

## 1. Federal detainers

Our analysis begins with the statutory language. The Speedy Trial Act provides, in pertinent part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). The term "offense" is defined as "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress," with certain exceptions not relevant here. 18 U.S.C. § 3172(2). Pursuant to the clear statutory language, the Act applies solely to individuals who have been arrested or served with a summons in connection with an alleged federal crime. See United States v. Kelly, 661 F.3d 682, 687 (1st Cir. 2011) ("The Act, by its terms, applies only where there is an 'arrest' or service of a 'summons' in connection with the relevant federal charges." (quoting 18 U.S.C. § 3161(b))), cert. denied, 132 S. Ct. 2116 (2011). Thus, only that class of individuals is entitled to the thirty-day arrest to indictment requirement set forth in section 3161(b).[7]

---

[7]Section 3161(h) sets forth various "periods of delay" that are to be excluded in calculating the deadline by which an indictment must be filed. Because we conclude that the clock did not begin ticking until October 3, there is no need to address any of these exceptions.

The record establishes that the appellant's August 6, 2011, arrest was effectuated by State deputies and resulted in him being charged with violations of State law. Following that arrest, he was held in State custody at the Cumberland County Jail after failing to post bail.

Although the State dismissed its charges against the appellant on August 29, 2011, the record is devoid of any evidence that the Cumberland County Jail was notified of the dismissal in a timely manner. To the contrary, one possible conclusion emerges from the record. The Jail was not told the charges had been dismissed. Consequently, the Jail continued to hold the appellant because the Jail officials operated on the assumption he was still facing State charges, and not because of the federal detainer. Indeed, this is precisely what Jail officials told the government prosecutor on September 26, 2011, when she called to inquire about the appellant's continued detention.

Clearly, the email exhibits submitted to the district court reveal that the Jail was not aware at all that the State charges had been dismissed until the State prosecutor asked the State court to fax a copy of the dismissal to the Jail on October 3, 2011. The record shows that once this was done, the Jail promptly advised the United States Marshals of the dismissal. The Marshals in turn swiftly arrested and took custody of the appellant

and brought him in front of a federal judge for his initial appearance, all of which occurred on October 3.

Based on these undisputed facts, we conclude the appellant was in State custody (though perhaps unlawfully) from the time of his August 6, 2011, arrest by State sheriff's deputies through October 3, 2011. During that time, he was subject only to the jurisdiction of the State of Maine. It was not until the United States Marshals Service took custody of the appellant on October 3, 2011, that he was arrested in connection with federal charges. Accordingly, and pursuant to the plain language of the Act, the thirty-day arrest to indictment clock did not begin to count down until October 3, 2011.

And the appellant's Speedy Trial Act argument simply cannot be reconciled with the clear statutory language. We have recognized that the Act "sets bright-line rules." United States v. Hood, 469 F.3d 7, 10 (1st Cir. 2006). Other Circuits have noted that the Speedy Trial Act "is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur." United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982); see also United States v. Shahryar, 719 F.2d 1522, 1523-24 (11th Cir. 1983).

Consistent with its mechanical nature, the Act sets forth a very clear trigger for the thirty-day time limit: the date on

which a defendant is arrested or served with a summons in connection with a federal offense. 18 U.S.C. § 3161(b). The lodging of a federal detainer is conspicuously absent from the list of triggering events. This absence was not an oversight or mistake, as a subsequent provision of the Act specifically addresses federal detainers and the procedures that are to be employed in the event a detainer is lodged against an individual already serving a prison sentence. See 18 U.S.C. § 3161(j)(1)-(2) (requiring the person with custody of a prisoner against whom a federal detainer has been lodged to advise that person of the charge and the right to demand trial thereon); see also Kelly, 661 F.3d at 685 ("The Act . . . addresses individuals charged with federal crimes who are already serving a term of imprisonment.").

Given the explicit reference to federal detainers elsewhere in the Act, it is clear Congress was well aware of their existence when it drafted the Act and, specifically, section 3161(b). The dictates of section 3161(b) are clear. Had Congress intended for the lodging of a federal detainer to begin the thirty-day countdown, it would have included detainers as a triggering event along with arrests and summonses. As Congress elected not to do so, it is not for this Court to substitute its judgment for that of Congress and rewrite the statute.

## 2.  Appellant's proposed knowledge test

We move on to the appellant's request that we impute a "knowledge" test to the Act.  According to the appellant, the countdown should begin on the date the government knew or should have known the appellant was being held due to the detainer and not the state charges.  In urging us to adopt this trigger--one not contained anywhere in the Act--the appellant relies on the opinion of the Fourth Circuit Court of Appeals in United States v. Woolfolk, 399 F.3d 590 (4th Cir. 2005).  In Woolfolk the Fourth Circuit concluded that the thirty-day clock begins to tick when the government knows or should know that an individual is being held by a state for the sole purpose of answering to federal charges.  Id. at 596.[8]  After careful review of the Fourth Circuit's opinion and reasoning, along with the Supreme Court's opinion issued several

---

[8]While the Fourth Circuit stated in its opinion that the government's "knowledge" triggers the clock, it ultimately remanded the matter for the district court to determine when "the Government knew or should have known that [the defendant] was being held by the state solely because of the federal detainer."  Id. at 597. Upon remand, the district court ultimately found--based on facts strikingly similar to those we have here--no violation of the Speedy Trial Act.  See United States v. Woolfolk, No. 3:03 CR 00079, 2005 WL 2100933 (W.D. Va. Aug. 31, 2005).  The court concluded the defendant remained in state custody not as a result of a federal detainer but, rather, because no one notified the jail once all state charges had been dropped.  Id. at *3.  The court further determined that the government did not and should not have known of the dismissal of state charges before his arrest by the Marshals and initial appearance in federal court, rendering his subsequent indictment less than thirty days later timely under the Speedy Trial Act.  Id. at *4.

years later in United States v. Tinklenberg, 131 S. Ct. 2007 (2011), we decline to adopt a "knew or should have known" test.

First, the Fourth Circuit's opinion neither addresses the clear statutory language of section 3161(b), nor cites any authority for reading into it a requirement that was not imposed by Congress. As set forth above, the intent of the Act is to provide bright-line rules that can be applied mechanically and consistently. The appellant has not provided us with any convincing authority that would allow this Court to modify or dispense with the Act's clear language and bright-line requirements.

Moreover, we are concerned that the knowledge test for which the appellant advocates frustrates the purpose of the Act and is unworkable in practice. Our trepidation is heightened by the Supreme Court's opinion in Tinklenberg, which leaves no doubt that the Act is to be interpreted in a manner allowing for the application of clear and definitive rules. See 131 S. Ct. at 2015.[9]

Tinklenberg involved the Speedy Trial Act's requirement for trial to commence within seventy days of (1) filing an information or indictment or (2) a defendant's initial appearance before a judicial officer. Id. at 2010. The provision at issue

_____

[9]The Fourth Circuit, of course, did not have the benefit of the Supreme Court's teaching in Tinklenberg when it decided Woolfolk in 2005.

excludes "delay resulting from any pretrial motion, from the filing of the motion through . . . [its] disposition" from this seventy-day period.  Id. (quoting 18 U.S.C. § 3161(h)(1)(D)).  The Sixth Circuit had held that a pretrial motion fell within the exclusion only if it actually caused or led to an expectation of delay.  Id.

The Supreme Court reversed, as this interpretation would make the exclusion "significantly more difficult to administer." Id. at 2014.  The Court posed a series of hypothetical questions to illustrate its concerns:

> [W]hat is to happen if several excludable and several nonexcludable potential causes of delay (e.g., pre-trial motions to take depositions, potential scheduling conflicts, various health examinations, etc.) coincide, particularly in multidefendant cases? Can the judge, motion by motion, decide which motions were responsible and which were not responsible for postponing what otherwise might have been an earlier trial date? And how is a defendant or his attorney to predict whether or when a judge will later find a particular motion to have caused a postponement of trial? And if the matter is difficult to predict, how is the attorney to know when or whether he or she should seek further postponement of the 70-day deadline?

Id. at 2015.

The Court proposed several methods of surmounting those challenges but recognized that implementing them would require "considerable time and judicial effort."  Id.  Doing so, however, "would not prevent all or even most mistakes, needless dismissals of indictments, and potential retrials after appeal--all of which

-17-

exact a toll in terms of the fairness of and confidence in the criminal justice system." Id. The Court also criticized the Sixth Circuit's rule because it would "turn[] the federal judicial system away from the far less obstacle-strewn path that the system has long traveled." Id.

Similar concerns are present with respect to the appellant's proposed knowledge rule. The appellant asks us to substitute the clear, bright-line rule that the thirty-day clock begins to tick at the moment of a federal arrest with a nebulous rule requiring a case-by-case inquiry into when the government "knew or should have known" a defendant was being held by state authorities only as a result of a federal detainer. This would essentially impose a requirement upon the government to continually monitor the status of state proceedings against every single individual against whom a federal detainer has been lodged for fear that a reviewing court could one day find that the government "should have known" of the dismissal of state charges shortly after their dismissal. So too would the judicial system be burdened by such a rule, as it would necessitate additional pretrial factfinding with respect not only to the actual proceedings in the state court, but also with respect to what the government actually knew and, moreover, what it should have known. Such a rule would inevitably result in needless dismissals of indictments and additional appeals to this Court.

None of these burdens are imposed by the clear language of the Act or by any decisional law that has been brought to this Court's attention. This standard would obliterate the bright-line rules set forth in the Act and run contrary to the concerns previously expressed by the Supreme Court and by this Circuit. We have no trouble, therefore, in rejecting such an unworkable, cumbersome, and burdensome standard, especially where it is obviously not mandated or contemplated by the statutory language.[10]

### 3. "Functional equivalent" arguments

Having disposed of his first two arguments, we consider the appellant's contention that a detainer is a "functional equivalent" of an arrest and thereby starts the thirty-day countdown. Although we have not heretofore had occasion to determine whether a federal detainer may act as the functional equivalent of a federal arrest, we have previously considered a similar question of whether the thirty-day clock begins to run while an individual remains in state custody on state charges. See

---

[10]We further note the appellant would not be entitled to relief even if we were to adopt his proposed test. The critical question in Woolfolk was the date on which the government knew or should have known that the defendant was held solely on federal charges. 399 F.3d at 597. The Jail kept the appellant incarcerated on the State charges up through October 3, 2011, when it learned for the first time they had been dismissed. There are no allegations or evidence of collusion between the State and the government to secure a tactical advantage or to violate the appellant's rights under the Speedy Trial Act. As such, even under the appellant's proposed rule, the thirty-day clock would not have begun to count down until October 3, 2011.

Kelly, 661 F.3d 682. As explicated below, our reasoning in Kelly applies with equal force here and is fatal to the appellant's position.

Kelly considered whether an individual's "appearance under a writ of habeas corpus ad prosequendum constitutes an 'arrest' or 'summons' under the [Speedy Trial Act]" and explicitly concluded that it did not. Id. at 687. As we explained, by issuing a writ of habeas corpus ad prosequendum the requesting jurisdiction seeks to have a prisoner in another jurisdiction produced to the requesting jurisdiction in order to stand trial. See id. Such a writ is "neither an arrest nor a summons" and differs from an arrest in that it does not involve taking an individual into custody. Id. Instead, the writ applies only to one who is already in custody. Id. Also, the fact that such a writ is directed to the individual's custodian, and not to the individual himself, further distinguishes it from an arrest or summons. Id. Furthermore, just as Congress clearly was aware of federal detainers when it drafted the Act, Congress was also "well aware" of ad prosequendum writs but chose not to have their issuance trigger the thirty-day clock. Id. at 688. We concluded that "[w]here a state arrest takes place and the United States later files a complaint and a detainer seeking to prosecute that individual, there is no federal 'arrest' under the Act, as the individual is in custody based on state law violations." Id. at

689 (citing <u>United States</u> v. <u>Taylor</u>, 814 F.2d 172, 175 (5th Cir. 1987) and <u>United States</u> v. <u>Copley</u>, 774 F.2d 728, 730 (6th Cir. 1985)); <u>see</u> <u>also</u> <u>Woolfolk</u>, 399 F.3d at 595 ("[T]he Government's filing of a complaint, serving of an arrest warrant and lodging of the warrant as a detainer . . . while Woolfolk was in state custody answering to state charges, did not activate the provisions of the Speedy Trial Act.").

The reasoning in <u>Kelly</u> applies strongly here. In effectuating an arrest or serving a summons, the government takes affirmative action against an individual. A federal detainer, however, is directed to an individual's custodian and does not effect a transfer of custody. Indeed, a detainer expressly contemplates a <u>future</u> transfer of custody. Thus, for purposes of the Speedy Trial Act, the lodging of a federal detainer is roughly equivalent to the issuance of a writ <u>ad</u> <u>prosequendum</u>. Accordingly, we have no hesitation in holding that where an individual is arrested on state charges and the government subsequently files a complaint and lodges a detainer against that individual, if the individual remains in custody based on the state charges and not "in connection with" the later-filed federal charges, 18 U.S.C. § 3161(b)'s thirty-day arrest to indictment requirement is not triggered.[11]

_____

[11]This is not to say that a detainer could <u>never</u> operate as a functional equivalent of a federal arrest. Generally speaking, an arrest may occur "when law enforcement officials effect a

-21-

It follows here that the Speedy Trial Act's thirty-day clock began ticking when the appellant was taken into federal custody on October 3, 2011. The subsequent indictment on October 26, 2011, was issued well within thirty days. As such, there was no violation of the appellant's rights under the Speedy Trial Act, and the district court correctly denied his motion to dismiss.

## B. Appellant's Request for Sanctions

Finally, the appellant argues that the government violated 18 U.S.C. § 3161(j)(1)(B) by failing to advise him of the detainer and that it should have been sanctioned by the district court. The government argues that this request has been raised for the first time on appeal and is, therefore, waived.

Our review of the record below indicates that the briefs and the hearing at the district court focused on the appellant's request for dismissal only. The appellant did not raise the issue of sanctions other than dismissal in even an oblique way until he filed his reply brief in the district court, in which he simply asked that court to "dismiss the indictment with prejudice and

---

significant deprivation of an individual's liberty." Copley, 774 F.2d at 730. A detainer may either request notification from a state prior to releasing an individual from custody, or ask state authorities to keep the individual in state custody. See Carchman v. Nash, 473 U.S. 716, 719, 105 S. Ct. 3401, 3403 (1985). Here, the State continued to hold the appellant on State charges past August 29, 2011. "Had the [Jail] been aware of the dropped charges and continued to hold [the appellant] under the authority of the detainer, different considerations would apply." Copley, 774 F.2d at 730. We do not pass upon what "different considerations" may come into play in an appropriate case.

grant other appropriate relief."  The appellant wholly failed to specify what measures or sanctions he believed would constitute "other appropriate relief" at any time before the district court. Neither did the appellant bring the district court's attention to 18 U.S.C. § 3162(b), which sets forth a range of potential sanctions falling short of dismissal that may be imposed to remedy certain violations of the Speedy Trial Act.

"Passing allusions are not adequate to preserve an argument in either a trial or an appellate venue."  <u>United States</u> v. <u>Slade</u>, 980 F.2d 27, 30 (1st Cir. 1992).  There is no indication that the appellant's cursory request for "other appropriate relief" was anything other than standard, boilerplate language.  The appellant did not sufficiently raise this request at the district court and has, therefore, waived any claims of error based on a failure to impose a sanction short of dismissal.

### III. CONCLUSION

Although we affirm the district court's denial of the appellant's motion to dismiss in all respects, this does not signal that we make light of or approve of what transpired while the appellant was held at the Cumberland County Jail.  However, his grievances lie beyond the strictures of the Speedy Trial Act. After careful consideration, the district court's denial of the motion to dismiss is affirmed.